UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 06-112-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WILLIAM LIVINGSTON PHIPPS, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On May 1, 2007, Defendant William Livingston Phipps filed a motion to withdraw his guilty plea entered before this Court on December 20, 2006. [Record No. 37] The government opposed the Defendant's motion and filed its response on May 4, 2007. A hearing was then held on the motion on today's date, May 7, 2007. At the hearing, the Defendant and the government presented testimony and evidence in support of their respective positions. Thereafter, the Court denied the Defendant's motion and revoked his bond pending the sentencing hearing which is currently scheduled for May 22, 2007.

## I.    Relevant Facts

On September 27, 2006, the Defendant was charged in a two count indictment with violations of 18 U.S.C. § 922(g)(1) and a forfeiture provision pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461. Count 1 charged that, on or about February 15, 2006, the Defendant, having been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess a number of firearms and a large quantity of ammunition, and that these items

-1-

affected commerce. The second count concerned the forfeiture of these items (specifically, thirty firearms and 7,387 rounds of assorted ammunition).

On December 12, 2006, the Defendant's counsel, David Kersey, moved to withdraw from further representation of Phipps in this action. By Order dated October 14, 2006, the Court scheduled a hearing on that motion for December 18, 2006. However, prior to the hearing, attorney Kersey filed a notice to withdraw the motion to withdraw, as well as a motion for re-arraignment as to the Defendant. [Record Nos. 19, 20] Unfortunately, the Defendant failed to appear for the previously-scheduled hearing on his attorney's motion to withdraw as counsel. Accordingly, the Court directed the Clerk of the Court to issue a bench warrant for the Defendant's arrest. The Court also denied the Defendant's motion for re-arraignment and motion to withdraw, without prejudice to be renewed at a later date.

On December 19, 2006, the Defendant, through counsel, filed a second motion for re-arraignment. The plea agreement and the Defendant's testimony at the hearing on December 20, 2006, as well as at the hearing on May 7, 2007, confirm that he signed the plea agreement on December 19, 2006. Re-arraignment of the Defendant on the charges contained in the indictment was then scheduled for December 20, 2006. On that date, the Defendant appeared with attorney Kersey and entered a plea of guilty to Counts 1 and 2 of the Indictment.[1]

During the plea hearing, the parties' counsel explained the terms of the plea agreement and the Court conducted a thorough discussion with the Defendant concerning all material terms of the agreement and his competency to enter into the agreement. The Defendant admitted that,

---

[1]    In the plea agreement, the Defendant asserted that the amount of ammunition was 7393 rounds, rather than the 7387 rounds charged in the indictment.

on or about February 10, 2006, he possessed the firearms and ammunition detailed in the indictment, that these items affected commerce, and that, prior to that date, he had been convicted of a felony.  [Record No. 41, p. 25-27]   Additionally, the Court conducted a conference with the Defendant at the bench concerning alleged straw purchases in connection with the firearms. [Record No. 41, p. 13-16] The parties also provided the Court with further information concerning the prospect of future prosecutions.

Regarding the Defendant's use of medications, the Court inquired as to the specific medications and treatment that the Defendant was receiving at that time.  The Defendant informed the Court that he was currently taking Tylox for breakthrough pain, Oxycontin 80 mg. twice daily, Alprazolam, as well as several medicines to treat his cardiovascular conditions.  The relevant portion of the transcript provides as follows:

> THE COURT:  Are you currently under a physician's or psychiatrist's care for any reason?
>
> DEFENDANT PHIPPS:  I'm under a physician's care.
>
> THE COURT:  And who is your doctor?
>
> DEFENDANT PHIPPS:  Glen Baker, Corbin, Kentucky.
>
> THE COURT: Has Dr. Baker treated you for any specific conditions, or is he just your general treating physician?
>
> DEFENDANT PHIPPS:  General practitioner, Your Honor, and he treats me for a heart condition, degenerative disc disease, spinal stenosis.  He treats me for pretty much everything.
>
> THE COURT:  All right.  I assume that he has prescribed certain medications for you, you've told me about some of your conditions; is that correct?
>
> DEFENDANT PHIPPS:  Yes.

-3-

THE COURT:  And do you know the names of the medications that you're currently taking?

DEFENDANT PHIPPS:  I know part of them.

THE COURT:  Part of them?  Are any of those medications narcotics or pain relievers?

DEFENDANT PHIPPS:  Yes, they are, Your Honor.

THE COURT:  Can you identify those for me, please?

DEFENDANT PHIPPS:  I take Tylox for breakthrough pain and OxyContin 80 twice daily.

THE COURT:  I assume you're taking those medications as they're prescribed for you; is that correct?

DEFENDANT PHIPPS:  Yes.  Yes, it is.

THE COURT:  Are you taking any other medications that would affect your ability to understand or reason with people?

DEFENDANT PHIPPS:  I take alprazolam.

THE COURT:  Alprazolam?  And what is that medication prescribed for, if you know?

DEFENDANT PHIPPS:  It's an antianxiety.  It treats depression also.

THE COURT:  All right. Those medications that you've just told me about, do they affect your ability to understand the questions I'm asking you?

DEFENDANT PHIPPS:  I don't think so.

THE COURT:  Do they affect your ability to reason with your attorney or to discuss matters with your attorney?

DEFENDANT PHIPPS:  I don't think so.

THE COURT:  All right.  Have you – you told me that you're receiving medication for anxiety disorder.  Have you ever been hospitalized for any type of a mental illness or mental condition?

DEFENDANT PHIPPS:  No, I haven't.

THE COURT:  Have you ever been hospitalized for any type of addiction, either to drugs or alcohol?

DEFENDANT PHIPPS:  No, I haven't.

THE COURT:  And you've never been diagnosed as having a mental illness or mental condition; is that correct?

DEFENDANT PHIPPS:  No, I haven't.

THE COURT:  You told me that you were receiving medication for anxiety.

DEFENDANT PHIPPS:  Yes, sir.

THE COURT:  Do you recall about when you were diagnosed as having anxiety disorder?

DEFENDANT PHIPPS:  Probably six or seven years ago.

THE COURT:  All right. You've taken the medication that you told me about since that time?

DEFENDANT PHIPPS:  Yes, I have.

THE COURT:  And have you told me generally about the medications that you take for your conditions?

DEFENDANT PHIPPS:  Yes, other than the cardio medicines, I didn't list them or anything.

THE COURT: All right.  But you do take those on a regular basis; is that correct?

DEFENDANT PHIPPS:  Yes, I do.  Yes, I do, Your Honor.

-5-

[Record No. 41, p. 4-6] Following questioning, the Court concluded that Phipps was competent and accepted his plea of guilty to Counts 1 and 2 of the Indictment. Sentencing was then scheduled for April 9, 2007. [Record No. 27]

On January 12, 2007, attorney Kersey filed a second motion to withdraw from further representation of the Defendant in the matter. [Record No. 30] The Court scheduled a hearing on that motion for January 29, 2007. At the hearing, the Court granted attorney Kersey's motion and informed the Defendant that an additional hearing would be scheduled if new counsel failed to enter an appearance within thirty days. After new counsel failed to appear with this thirty day period, a hearing was scheduled for March 13, 2007. During the March 13th hearing, the Defendant informed the Court that he had been unable to retain counsel due to a financial dispute with attorney Kersey. The Court subsequently appointed attorney John Chappell to represent the Defendant at sentencing and continued the sentencing hearing until May 7, 2007.

On May 1, 2007, the Defendant, through new counsel, filed the instant motion to withdraw his plea of guilty. [Record No. 37]

## II.   Discussion

Under Rule 11(d) of the Federal Rules of Criminal Procedure, a defendant may withdraw a plea of guilty prior to sentencing only if he can establish a "fair and just reason" for doing so. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (*citing* Fed. R. Crim. P. 11(d)(2)(B)). A defendant has the burden of proving that withdrawal of the former plea is justified. *United States v. Hunt*, 205 F.3d 931, 936 (6th Cir. 2000) (*citing United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996)). According to the Sixth Circuit, "[t]he purpose of Rule 11(d) is to allow a

'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *Dixon*, 479 F.3d at 436 *(citing United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)). Here, Phipps asserts that he should be allowed to withdraw his guilty plea because he did not enter into it knowingly, intelligently and voluntarily due to the influence of prescription medications at the time of the plea hearing. As such, he argues he should be allowed to withdraw his plea and proceed to trial on the underlying indictment.

To succeed on a motion to withdraw based on allegations of incompetency, a "[d]efendant must demonstrate he was not mentally competent to enter his plea by pointing to facts that positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to his actual competency during the hearing accepting his plea." *United States v. Hall*, 2007 U.S. Dist. LEXIS 14168 (E.D. Ky. Feb. 27, 2007). "If Defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational and factual understanding of the proceedings against him, he is competent to enter a guilty plea." *Id*.

At the outset, the Court notes that the rule for withdrawal of a guilty plea was formerly codified as Rule 32(e) of the Federal Rules of Criminal Procedure. However, effective December 1, 2002, Rule 11 of the Federal Rules of Criminal Procedure was amended to include the circumstances under which a defendant may withdraw a former plea of guilty or nolo contendere. Subsection (d) of this Rule provides as follows:

    **(d)**    **Withdrawing a Guilty or Nolo Contendere Plea.**  A defendant may withdraw a plea of guilty or nolo contendere:

        **(1)**  before the court accepts the plea, for any reason or no reason; or
        **(2)**  after the court accepts the plea, but before it imposes sentence if:

                **(A)** the court rejects a plea agreement under Rule 11(c) (5);  or
                **(B)** the defendant can show a fair and just reason for requesting the withdrawal.

Fed. R. Crim. P. 11(d).[2]

On several occasions, the Sixth Circuit has addressed the factors to be considered in determining whether a defendant should be allowed to withdraw a plea of guilty prior to sentencing.  *See United States v. Spencer*, 836 F.2d 236 (6th Cir. 1987); *United States v. Alexander*, 948 F.2d 1002 (6th Cir. 1991); *United States v. Bashara*, 27 F.3d 1174 (6th Cir. 1994); *Baez*, 87 F.3d 805; *United States v. Durham*, 178 F.3d 796 (6th Cir. 1999); *Hunt*, 205 F.3d 931 (6th Cir. 2000); *United States v. Valdez*, 362 F.3d 903 (6th Cir. 2004); and *United States v. Ellis*, 470 F.3d 275 (6th Cir. 2006).

In *United States v. Spencer*, the defendant was indicted on several counts related to a bank robbery.  While represented by counsel, he initially agreed to a plea bargain and entered a guilty plea.  However, he later changed his mind and filed a motion to withdraw his plea.  The District Court for the Northern District of Ohio denied the motion and sentenced the defendant in accordance with his plea agreement.  On appeal, the Sixth Circuit affirmed the district court's

---

[2]      The Advisory Committee Notes to this rule indicate that no substantive change was intended through this amendment.  Instead, "the Committee decided to more clearly spell out in Rule 11(d) and 11(e) the ability of the defendant to withdraw a plea."  *See* Advisory Committee Notes to Rule 11 of the Federal Rules of Criminal Procedure, 2002 Amendments.  Accordingly, this Court's analysis will be guided by relevant authority decided under the former version of Rule 32(e) and the amended version of Rule 11 of the Federal Rules of Criminal Procedure.

determination based, in part, on the fact that the defendant: admitted under oath that he committed the crime charged; was familiar with the criminal justice system because he was already serving another sentence for a different crime and; failed to present evidence that proved threats or duress in the entry of his guilty plea as alleged in his motion to withdraw the plea. *Id*. at 241.

Citing *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987), the Sixth Circuit explained in *Spencer* that there are several factors a district court may consider when evaluating whether a defendant has established a "fair and just" reason to withdraw his guilty plea under Rule 32 of the Federal Rules of Criminal Procedure. *Spencer*, 836 F.2d at 238-39. One factor is the length of time between entry of the guilty plea and the filing of the motion to withdraw it. A second factor to be considered is why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings. As the court noted with respect to this factor, "where a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker." *Spencer*, 836 F.2d at 239 (citations omitted.) The third factor the Sixth Circuit noted in *Spencer* concerned whether the defendant has asserted or maintained his innocence. *Id*. at 239. Fourth, the district court may consider the circumstances underlying the entry of the guilty plea, the nature and background of the defendant, and whether the defendant has admitted his guilt. *Id*. at 239-40.

In *United States v. Alexander*, the defendant attempted to withdraw his guilty plea and reopen a previously-conducted suppression hearing. In denying the motion, the court noted that the motion to vacate was filed approximately five months after entry of the plea of guilty.

*Alexander*, 948 F.2d at 1004.  Further, the defendant failed to offer any reason for neglecting to raise the grounds for vacating the plea at an earlier point in the proceedings and failed to articulate any reasons for not calling witnesses who were available at the time of the suppression hearing.

Affirming the district court's denial of the defendant's motion, the Sixth Circuit explained that, while prejudice to the government is a factor to be considered,  prejudice need not always be shown.

> In determining whether a fair and just reason has been advanced . . . Courts have taken into account the absence of a defendant's vigorous and repeated protestations of innocence  . . . a defendant's lack of innocence or naivete with respect to the criminal justice system . . . and finally the potential prejudice to the government should the plea be withdrawn.  The prejudice to the government need not be established or considered unless and until the defendant has established a fair and just reason for vacating his plea.

*Id*. at 1004.

In *United States v. Bashara*, the court listed the following seven factors to be considered in determining whether a motion to withdraw a plea of guilty should be granted.

1.    The amount of time that elapsed between the plea and the motion to withdraw it;

2.    The presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;

3.    Whether the defendant has asserted or maintained his innocence;

4.    The circumstances underlying the entry of the guilty plea;

5.    The defendant's nature and background;

6.    The degree to which the defendant has had prior experience with the criminal justice system; and

-10-

7.      Potential prejudice to the government if the motion to withdraw is granted.

*Bashara*, 27 F.3d at 1181.  Applying these factors, the court noted that Bashara complained to the probation officer eleven days after entering his guilty plea.  Although he later called his attorney, he was advised not to withdraw his plea.  Following a two week hospitalization, the defendant then wrote a letter to the court explaining the reasons that he wanted to withdraw his plea.  And approximately two weeks later, he formally moved to withdraw the plea.

At a subsequent hearing, Bashara claimed that his former attorney has pressured him to plead guilty because the attorney was not adequately prepared to conduct a defense.  However, the defendant testified that he continued to feel that the government has a weak case against him.  He later conceded at the hearing that while he was heavily involved in the use of drugs and was not innocent of trafficking in drugs, he claimed that he did not traffic "to the extent that I'm being indicted for."  *Id*. at 1181.

Notwithstanding these facts, the Sixth Circuit found no abuse of discretion by the trial court in denying the motion to withdraw the guilty plea based on the court's determination that the defendant did not assert his innocence and the fact that his detailed answers to the court's questions about his involvement in the crimes to which he has entered a plea reflected "an intelligent" acknowledgment of guilt.  Thus, his plea "was not the result of a hastily entered plea made with an unsure heart or a confused mind."  *Id*.

More recently, in *United States v. Ellis*, 470 F.3d 275 (6th Cir. 2006), the Sixth Circuit again addressed a defendant's motion to withdraw his guilty plea.  In that case, the defendant claimed that he could not come up with the money that he agreed to forfeit under the plea

agreement and that he was unaware at the time of the plea that the government would seek forfeiture of his farm if he could not make cash payment. In response, the United States asserted that the defendant knowingly, intelligently and voluntarily entered the plea and failed to demonstrate a fair and just reason for withdrawing his guilty plea.

Citing *United States v. Bashara*, the Sixth Circuit weighed the seven factors to determine whether the defendant had stated a fair and just reason to allow withdrawal of a plea. In doing so, the court noted that "the factors listed are a general, non-exclusive list and no one factor is controlling." *Ellis*, 470 F.3d at 281. The court concluded that the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea given: the length of time between the entry of the defendant's plea and the motion for withdrawal; the absence of any breach of the plea agreement; the defendant's confession of guilt; a careful reading of the plea agreement's terms to the defendant during the plea hearing; and the defendant's criminal history. *Id*. at 286.

In the present case, the Defendant contends that he should be permitted to withdraw his guilty plea because he was impaired due to prescription medication that was administered to him on the morning of the plea hearing. According to the Defendant, the oxycodone 80 mg. tablet was broken into three or four pieces, resulting in a heightened effect. The Defendant testified that he was administered three oxycodone pills, one on the morning of December 19, one that evening, and one on the morning of December 20, which further contributed to the effect of the medication. In support of this contention, the Defendant presented testimony and medical records from the Laurel County Detention Center ("LCDC") detailing the administration of his

medications.

The Defendant further testified that he did not know that he was signing a plea agreement on December 19, 2006, that he does not recall the plea hearing on December 20, 2006, and that he later became severely ill requiring hospitalization after he was released on bond at the close of that hearing.

Based on the testimony and medical records presented at the hearing on May 7, 2007, as well as the seven factors outlined by the Sixth Circuit to be considered in determining whether a defendant should be allowed to withdraw his plea of guilty, the Court concludes that the Defendant's motion should be denied. In reaching this conclusion, the Court finds that the Defendant's testimony concerning the signing of the plea agreement and the administration of the prescription medication on the day of the plea hearing lacks credibility, as does the testimony of Jerry Wright, a cell-mate of the Defendant's at the LCDC.[3] In making this finding, the Court favors the testimony of Betty McKnight, a nurse at the LCDC who testified that the medical aids at LCDC follow the proper procedure in administering medications. Additionally, the medical records from the LCDC reflect that the oxycodone administration sheet specifically says "Do not crush" and that this instruction is highlighted and marked with an asterisk. The administration sheet as well as the medication intake sheet show that Phipps' wife, Barbara Phipps, only

---

[3]     Jerry Wright testified that he was standing behind the Defendant in the holding cell at the LCDC on the morning of December 20, 2006. According to Wright, the Defendant received three pills (one capsule and two pills which included an oxycontin pill that had been broken into approximately four or five pieces). However, Wright further testified that the Defendant came to see him at his home a few weeks ago concerning his testimony as to the events on December 20. The Court does not find Wright's testimony concerning these events to be credible based on the observation of his speech and mannerisms during the hearing. Instead, the Court finds both the testimony of Wright as well as that of the Defendant concerning this issue contrived. In addition, while Wright indicated that the Defendant's appeared intoxicated shortly after taking his medications on December 20th, this is inconsistent with the Court's observations on that date.

brought two oxycodone 80 pills, not three pills as was the Defendant's testimony.  According to McKnight, the nurses at the LCDC would never have administered the oxycodone in a crushed or broken form because it is a time-released drug and because of the specific instructions not to do so.

Next, the Court also finds that the testimony of the Defendant's previous counsel, David Kersey, to be credible concerning the signing of the plea agreement on December 19, 2006, and his review of that document with the Defendant.  According to attorney Kersey, he reviewed the agreement with the Defendant in late November 2006, and made markings on the original document as he was going over it with his client.  This testimony is consistent with attorney Kersey's statements to the Court during the re-arraignment hearing held on December 19, 2006.  At that time, attorney Kersey informed the Court that the marks on the original agreement were placed there by him while he was reviewing the document with the Defendant.  [Record No. 41, p.8]

With regard to the Defendant's competency at the re-arraignment on December 20, 2006, the Court finds that the Defendant was competent to enter a plea and that he did so knowingly, intelligently, and voluntarily.  The Court observed that the Defendant was alert and lucid throughout the hearing.  This finding is supported by the fact that the Defendant's treating physician, Dr. Glen Baker, testified that the Defendant had been on both the oxycodone 80[4] and

---

[4]     Dr. Baker further testified that the Defendant had been under his care for four or five years and that he had been prescribed a lower dose of oxycodone 40 prior to the oxycodone 80.  According to Dr. Baker, the oxycodone 40 was insufficient to manage the Defendant's pain, and he increased the prescription to oxycodone 80 at least three or four years ago.  While this medication *could* affect mental and physical abilities, it is apparent to the Court that Phipps was not impaired at the time of the rearraignment hearing.

the alprazolam for at least three to four years.  Although Dr. Baker noted that oxycodone should not be crushed or broken due to the possibility of mental and physical impairment, he could not testify to a reasonable degree of medical certainty as to the Defendant's impairment or lack thereof at the time of re-arraignment.  He did, however, state that he was aware that the Defendant dealt in firearms and that he would not have prescribed the medication if he believed that it would impair the Defendant's ability or endanger him in any way.

The medical records from the LCDC reflect that the Defendant's prescription for oxycodone had been filled on December 8, 2006, and the Defendant testified that he took his medication daily without any impairment to his physical or mental ability.  According to nurse McKnight, the Defendant did not report any adverse reaction to the medication while he was at the LCDC, and if he had reported any such reaction, it would have been reflected and documented in his records.  Wright and the Defendant's daughter, Whitney Phipps, testified that the Defendant appeared to be impaired on the day of the hearing.  Again, however, the Court had occasion to observe the Defendant throughout the hearing and particularly at a bench conference.  Specifically, the Court asked the Defendant if he understood that no promises had been made concerning the possibility of future prosecutions and was satisfied by the Defendant's responses.  Attorney Kersey testified that the Defendant brought these issues to his attention at the re-arraignment and that the Defendant understood the proceedings at that time.

Moreover, the Court notes that it was aware that there were issues between the Defendant and his counsel at the time of the re-arraignment, as attorney Kersey had previously filed and then subsequently withdrawn a motion to withdraw as counsel.  Accordingly, the Court

-15-

conducted a thorough and extensive colloquy with the Defendant, including the conversation at the bench.  At the re-arraignment hearing, the Defendant testified under oath that he had gone over this agreement with his attorney and that he understood the terms.  The Defendant further testified that he had signed and dated it on December 19, 2006.

Finally, as to the Defendant and his daughter's testimony concerning the events that occurred subsequent to the plea agreement, the Court cannot determine whether the Defendant took additional medications after the re-arraignment had concluded.  However, as previously stated, the Court was able to observe the Defendant throughout the re-arraignment and specifically found that:

> THE COURT: Well, I am satisfied with the responses that you have given me, and I will make the following findings in your case at this time:
>
> It is the finding of this Court in the case of the United States v. William Livingston Phipps that Mr. Phipps is fully competent and capable of entering an informed plea.  Further, his plea of guilty is a knowing and voluntary plea which is supported by an independent basis in fact containing the essential elements of the offense that has been charged.  His plea of guilty will be accepted, and he will be adjudged guilty of the offense charged in Counts One and Two of the indictment.

[Record No. 41, p. 29]

Additionally, although the Court has considered each of the seven factors outlined by the Sixth Circuit, it will discuss only those relevant in this particular case.  First, the length of time between the Defendant's plea of guilty and his motion to withdraw is a strong factor supporting the denial of the motion.  Here, 131 days passed between the time when the Defendant entered a guilty plea and the time that he requested withdrawal of his plea.  In fact, the Defendant did not move to withdraw his plea until less than one week before his sentencing hearing.  (While

-16-

the Defendant may have intimated to others that he would request to withdraw his plea, as a factual matter, he waited until after disclosure of the Presentence Investigation Report to actually file the motion.) The Sixth Circuit has affirmed the denial of motions to withdraw based on even shorter periods of time. *See Spencer*, 836 F.2d 236 (motion to withdraw guilty plea denied where time period between the entry of plea and motion to withdraw was 35 days); *Valdez*, 362 F.3d 903 (motion to withdraw guilty plea denied where time period between the entry of plea and motion to withdraw was 75 days).

Second, the Defendant has failed to present a *valid* reason for a delay of this magnitude. Attorney Kersey was not relieved from representation in this matter until January 29, 2007, more than a month after the Defendant had entered his plea. Additionally, although the Defendant contends that he was without counsel from that time until March 13, 2007, there was nothing preventing him from informing the Court that he wished to withdraw his plea. In fact, the Defendant testified that he has made filings in state and federal court in the past on his own behalf. When he finally did obtain Court-appointed counsel in March, the Defendant still waited until May 1, 2007 (again, less than one week prior to his sentencing), to move to withdraw his plea. As noted above, it was not until after the pre-sentence report and the guideline calculations became available that the Defendant presented his story concerning the improper administratio of medication by the LCDC on the date of his re-arraignment. Accordingly, because the length of time between the Defendant's guilty plea and his motion to withdraw was substantial, and because the Defendant has not offered a valid reason for this delay, the Court concludes that the time delay weighs against allowing him to withdraw his plea.

As to the third factor, the Defendant's failure to maintain that he is innocent of the charges contained in the indictment also supports the denial of the motion to withdraw. In fact, during the plea hearing held in this matter on December 20, 2006, the Defendant acknowledged his guilt regarding the charges contained in Counts 1 and 2 of the Indictment and confirmed the factual basis for the charges to which he pleaded guilty. Additionally, Agent Tom Chittum testified at the hearing on May 7, 2007, that the Defendant made post-Miranda statements that he knew he was a convicted felon, that he had been denied when he tried to buy a gun, and that he had used his wife to make straw purchases of firearms.

The record also reflects that the Defendant was provided a significant amount of information and evidence to allow him to make an informed decision regarding whether to change his plea or proceed to trial. Based upon this compelling evidence, it appears that he concluded that a change of plea was the prudent course to follow. This decision was not made in haste or confusion. Also, the Court notes that, at the plea hearing, the Court fully advised the Defendant that, until the Pre-sentence Investigation Report had been completed and any objections resolved, it would be impossible for the Court or for his attorney to know precisely what the guideline range would be in his case. The Defendant acknowledged this fact, yet elected to enter into a guilty plea at that time.

The Court has already extensively discussed the fourth factor, that is, the circumstances surrounding the guilty plea, as detailed above. In summary, the record reflects that the Defendant knowingly and voluntarily entered into his plea agreement and that he reviewed the agreement with his attorney, the government and the Court at the plea hearing on December 20,

-18-

2006. The Court carefully reviewed the essential terms of the agreement, and the Defendant admitted to the factual basis in support of the charges contained in the indictment. The Court specifically advised the Defendant that a recommended guideline calculation would not be available until the completion of the Pre-sentence report. As noted previously, the Court was aware of the issues between the Defendant and his attorney and, therefore, took great care in going over the agreement. The Defendant acknowledged that he understood the rights he was giving up by entering a plea, and that no one had made any promises to induce him to plead guilty in this case. In addition, both the Defendant and his attorney stated that Phipps understood all aspects of the plea agreement and the proceedings on that date.

Next, the Court finds that the Defendant's background and his prior experience with the criminal justice system weigh against allowing withdrawal of his guilty plea. Notably, at the time of his re-arraignment, the Court determined that the Defendant was fully aware of the nature of the proceedings against him. The Court has observed and interacted with the Defendant on a number of occasions and concludes that he is fully familiar with the workings of the criminal justice system. He has previously been convicted of a felony and has had numerous run-ins with the law, including a misdemeanor fraud conviction. Additionally, the Defendant testified that he has made court filings on his own behalf in the past. In light of the Defendant's criminal history and his prior experience with the court systems, the Court finds that he had the capacity to evaluate the impact of his plea as well as the risk he would be taking by proceeding to trial. Thus, this factor discounts any assertion that the Defendant was unaware of the consequences of his guilty plea.

-19-

Because the Defendant has not demonstrated a fair and just reason for vacating his plea, the Court need not address the final factor, which is the potential prejudice to the government. *Alexander*, 948 F.2d at 1004.

**III.     Conclusion**

The Defendant has not met his burden of establishing a fair and just reason supporting his motion to withdraw his plea of guilty.  Accordingly, his motion to withdraw his guilty plea [Record No. 37] is **DENIED**.

This 7th day of May, 2007.

Signed By:

*Danny C. Reeves*   DCR

**United States District Judge**